**MORTGAGE RECOVERY LAW GROUP, LLP**
PAUL A. LEVIN (State Bar No. 229077)
LAUREN M. GIBBS (State Bar No. 251569)
550 North Brand Boulevard, Suite 1100
Glendale, California 91203
Telephone: (818) 630-7900 Facsimile: (818) 630-7920
e-mail: plevin@themrlg.com, lgibbs@themrlg.com

**FEDERAL DEPOSIT INSURANCE CORPORATION**
JOHN V. CHURCH (to seek admission pro hac vice)
3501 Fairfax Avenue
Arlington, VA 22226
Telephone: (904) 302-2796
e-mail: jchurch@fdic.gov

Attorneys for Plaintiff Federal Deposit
Insurance Corporation as Receiver
for Washington Mutual Bank

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR WASHINGTON MUTUAL BANK,<br><br>          Plaintiff,<br><br>     vs.<br><br>EVERETT FINANCIAL INC. dba SUPREME LENDING, a Texas corporation,<br><br>          Defendant. | Case No.<br><br>**COMPLAINT FOR CONTRACTUAL INDEMNITY** |

## **INTRODUCTION**

1.     Pursuant to written agreements, defendant Everett Financial Inc. dba Supreme Lending ("Supreme Lending") brokered mortgage loans for Washington Mutual Bank and/or its subsidiaries, including Long Beach Mortgage Company (collectively, "WaMu").  As part of their agreements, Supreme Lending promised to indemnify WaMu for any losses arising either directly or indirectly, in any way as a result of inaccurate or incomplete application or other documentation for loans brokered by Supreme Lending.

2.     After WaMu funded the loans from Supreme Lending, WaMu sold Supreme Lending-brokered loans into residential mortgage-backed securitized trusts ("RMBS Trusts") for which Deutsche Bank National Trust Company served as trustee ("Trustee").  The Trustee ultimately asserted claims that it suffered losses because of defective loans sold into the RMBS Trusts, including at least 33 mortgage loans brokered by Supreme Lending ("Supreme Lending Defective Loans").

3.     Plaintiff Federal Deposit Insurance Corporation as Receiver for WaMu ("FDIC-R") incurred losses settling the Trustee's claims.  FDIC-R's losses resulted from inaccurate or incomplete loan applications or other documentation prepared by or at the direction of Supreme Lending including, *inter alia*, Supreme Lending's submission of loan applications and supporting material that misrepresented such things as the borrowers' credit obligations, employment status, income, or occupancy status.

4.     FDIC-R demanded that Supreme Lending honor its written contractual indemnification obligation.  Because Supreme Lending has not honored its obligations, FDIC-R brings this action as successor to WaMu's rights, titles, powers, and privileges.

COMPLAINT

## **PARTIES, JURISDICTION, AND VENUE**

5.     The Federal Deposit Insurance Corporation is an instrumentality of the United States and is organized and exists under the laws of the United States.  12 U.S.C. §§ 1811, 1821(d).  Pursuant to 12 U.S.C. § 1821(d)(2), FDIC-R succeeded to all rights, titles, powers, and privileges of WaMu and of any stockholder, member, account holder, depositor, officer, or director of WaMu with respect to the bank and its assets.  FDIC-R brings this action in its capacity as the duly appointed receiver of WaMu, which the Office of Thrift Supervision closed on September 25, 2008, appointing FDIC as Receiver for WaMu that same day.

6.     Supreme Lending is a Texas corporation with its principal place of business in Dallas, Texas, and is registered and licensed to do business in California.

7.     This Court has subject-matter jurisdiction pursuant to 12 U.S.C. § 1819(b)(1) and (2) and 28 U.S.C. §§ 1331 and 1345.

8.     Supreme Lending contractually agreed to venue in this district.  *See* Broker Agreement ("Agreement"), ¶ 21, attached hereto as Exhibit 1.  Venue is also proper in this district pursuant to 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district because, among other things, the contractual business relationship was entered into by WaMu in this district and the place of performance for all or some of the obligations sued upon was in this district.  Venue is also proper in this district because Supreme Lending resides in this district in that it is subject to the court's personal jurisdiction with respect to the action at issue.

1

**FACTUAL ALLEGATIONS**

2    9.    WaMu was a federal savings bank that, directly or through affiliates

3 and/or subsidiaries, among other things, purchased, funded, and sold mortgage loans

4 to investment trusts that packaged loans into securities for investors, which are

5 generally known as residential mortgage-backed securities.

6    10.    On information and belief, Supreme Lending engaged in the business

7 of brokering, originating, processing, packaging, submitting for funding, selling

8 and/or transferring loans secured by real property.

9    **A. Supreme Lending's Contractual Obligations**

10    11.    Supreme Lending and WaMu had a contractual business relationship,

11 governed by one or more mortgage broker agreements including the Agreement

12 attached hereto as Exhibit 1.

13    12.    Under the Agreement, Supreme Lending agreed to "prepare and

14 complete applications for loans to be secured by mortgages which shall meet all

15 applicable requirements established by [WaMu] at its sole and absolute discretion."

16 Supreme Lending further agreed it would "obtain factual data, at its own expense,

17 relating to the loan application, necessary to the proper and accurate completion of

18 such application[.]"

19    13.    Supreme Lending was compensated for any loans funded by WaMu.

20    14.    Pursuant to the Agreement, Supreme Lending expressly agreed to

21 indemnify WaMu as follows:

22
23
24
25
26

> [Supreme Lending] will indemnify, defend and hold [WaMu] …
> harmless from any and all costs, claims, charges, actions, causes of
> action, losses or liability arising either directly or indirectly, regardless
> of any indemnitee's negligence, by reason of [Supreme Lending]'s
> negligence, a breach of the terms or conditions of this Agreement, or in
> any way as a result of an inaccurate or incomplete application or other
> documentation prepared by or at the direction of [Supreme Lending].

27

28

4

**B. The Supreme Lending Defective Loans**

15.    As noted above and set forth in more detail below, the Trustee asserted claims against FDIC-R based on WaMu's sale of defective loans into the RMBS Trusts, including the Supreme Lending Defective Loans.  As a result, FDIC-R incurred losses in connection with the Supreme Lending Defective Loans.

16.    Pursuant to the Agreement, Supreme Lending brokered the 33 Supreme Lending Defective Loans summarized on Exhibit 2 attached hereto.

17.    The Supreme Lending Defective Loans failed to meet "all applicable requirements" and "terms or conditions of [the] Agreement", and contained inaccurate and incomplete applications or other documentation, because of misrepresentations in the application materials including, but not limited to, misrepresentations relating to the quality and characteristics of the loans, the borrowers, and the collateral.

18.    As an example, the loan documents for borrower LS contained numerous deficiencies, inaccuracies and material misrepresentations.   Supreme Lending originated two mortgage loans totaling $292,500 to LS in April 2006.  The loan applications stated that she was earning $12,600 per month.  However, her actual monthly income was no more than $6,100.  Supreme Lending prepared and submitted loan application documents for LS that materially overstated the borrower's monthly income.

19.    As another example, Supreme Lending originated two mortgage loans totaling $537,000 to MH and RH in May 2006.  The loan application failed to disclose RH's ownership of a property RH purchased prior to the subject loan.  The loan application also failed to disclose $153,000 of mortgage debt incurred by RH in connection with the undisclosed property.  Supreme Lending prepared and submitted loan application documents for MH and RH that failed to disclose RH's indebtedness on another property.

COMPLAINT

### C. WaMu Sale of the Supreme Lending Defective Loans to the RMBS Trusts

20.    After WaMu funded the Supreme Lending Defective Loans, WaMu sold each of them to the RMBS Trusts.

21.    In connection with such sales, and in reliance on the materials, representations, obligations, and remedies Supreme Lending provided, WaMu provided similar representations, obligations, and remedies to the RMBS Trusts as those made by Supreme Lending regarding the quality and characteristics of the loans, the borrowers, and the collateral.

22.    The RMBS Trusts suffered losses resulting from defective loans that WaMu sold to the RMBS Trusts, including the Supreme Lending Defective Loans.

### D. FDIC-R's Settlement with Trustee

23.    On December 30, 2008, the Trustee filed a proof of claim with FDIC-R asserting that WaMu sold the RMBS Trusts defective loans.  On August 26, 2009, the Trustee filed a lawsuit in the District Court for the District of Columbia against FDIC-R for losses resulting from defective loans that WaMu sold to the RMBS Trusts, including the Supreme Lending Defective Loans.

24.    FDIC-R was liable for the losses due to breaches of WaMu's representations and obligations concerning the quality and characteristics of the loans, the borrowers, and the collateral on certain loans sold into the RMBS Trusts, which loans included the Supreme Lending Defective Loans.  Given Supreme Lending's role and conduct in connection with the Supreme Lending Defective Loans, including Supreme Lending's relationship to the borrowers and that the loan information, documentation, and application packages were prepared, gathered, and submitted by Supreme Lending, the claims against FDIC-R and FDIC-R's liability exposure to the Trustee arose out of inaccurate or incomplete loan applications or other documents prepared by or at the direction of Supreme Lending.

6

COMPLAINT

25.     FDIC-R defended itself against the claims in the Trustee's lawsuit and eventually settled with the Trustee.

26.     On June 30, 2017, the Superior Court of the State of California (Orange County) approved the Trustee's application to accept a settlement of its claims against the FDIC-R for the FDIC-R's payment of more than $3 billion, including claims arising out of or relating to the Supreme Lending Defective Loans. Settlement of the Trustee's claims for that court-approved amount was objectively reasonable.  On September 8, 2017, FDIC-R issued a $3,006,929,660 Receivership Certificate in settlement of Trustee's claims, thereby suffering a loss under the Agreement's indemnification provision.  FDIC-R's claims are timely because they are brought within six years of the date FDIC-R suffered a loss.  12 U.S.C. § 1821(d)(14).

**E. Supreme Lending's Breach of the Indemnification Obligations**

27.     On August 23, 2021, FDIC-R sent a demand letter to Supreme Lending seeking indemnification for its losses arising out of or relating to the Supreme Lending Defective Loans.  Supreme Lending has not honored its obligation to indemnify under the Agreements.

28.     The Agreements provide that the prevailing party in any action to enforce it may recover its reasonable attorneys' fees.  In order to enforce Supreme Lending's obligations under the Agreements, FDIC-R has retained the firm of Mortgage Recovery Law Group, LLP and agreed to pay it reasonable attorneys' fees.  In addition, FDIC-R has assigned in-house counsel to assist in actively preparing to bring this case to trial.

29.     All conditions precedent to the relief sought in this action have been fulfilled.

## CLAIM FOR RELIEF

### (Contractual Indemnification)

30.     Plaintiff FDIC-R incorporates by reference the allegations set forth above as though set forth fully herein.

31.     The Agreements are valid and enforceable contracts.

32.     Plaintiff substantially performed all its obligations under the Agreements.

33.     In connection with settlement of the claims involving the Supreme Lending Defective Loans, FDIC-R incurred substantial losses and damages resulting from the inaccurate or incomplete applications or other documentation for loans brokered by Supreme Lending.

34.     FDIC-R is entitled to indemnification from Supreme Lending for the losses FDIC-R suffered settling the Trustee's claims.

35.     Supreme Lending breached its obligation to indemnify FDIC-R, resulting in damage to FDIC-R in an amount to be proven at trial.

8

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff FDIC-R respectfully requests that it be granted:

A.    A judgment against Supreme Lending in an amount to be proven at trial for its breach of its indemnification obligation;

B.    Pre-judgment interest under 12 U.S.C. § 1821(l) or applicable state law;

C.    Reasonable attorneys' fees;

D.    Costs and expenses; and

E.    Any other relief as the Court deems just and proper.


MORTGAGE RECOVERY LAW GROUP, LLP


By: /s/ Paul A. Levin
Paul A. Levin
Attorneys for Plaintiff Federal Deposit
Insurance Corporation as Receiver for
Washington Mutual Bank


FEDERAL DEPOSIT INSURANCE CORPORATION


By: /s/ John V. Church
John V. Church (to seek admission to pro hac vice)
Attorneys for Plaintiff Federal Deposit Insurance
Corporation as Receiver for Washington Mutual Bank

9